## LONG v. CALLOWAY. (No. 1094.)

(Court of Civil Appeals of Texas. El Paso. March 25, 1920.)

**I. Exchange of property ⬤⟿5—Executory contract may be rescinded for nonperformance.**

Where one of the parties fails to perform a promissory agreement on his part which constitutes a material inducing consideration for the exchange, the other party is entitled to rescind an executory contract for the exchange of lands.

**2. Deeds ⬤⟿70(1)—Grantor may rescind for fraudulent nonperformance by grantee of promise to do future act.**

A grantor may rescind an executed conveyance of land granted in consideration of a representation and promise on the part of the gran-

tee to perform some act in the future and which the grantee refuses to perform, where the representation and promise were made for the purpose of defrauding and deceiving the grantor without any intention of performance, and the failure is without excuse.

**3. Deeds ⬤⟿211(3)—Grantee's intention not to perform promise cannot be inferred from nonperformance alone.**

Grantee's intention not to perform a promise which was the consideration for a conveyance cannot be inferred merely from the fact of nonperformance.

**4. Exchange of property ⬤⟿5—Nonperformance of promise not ground for rescission unless there was original intent not to perform.**

Where grantee, who received lands in exchange for an interest in an oil and gas lease, refused to execute in favor of the grantor an oil and gas lease on the property received, according to the agreement, such refusal does not after conveyance warrant the grantor in rescinding unless the promise was made without intention to perform.

**5. Appeal and error ⬤⟿216(2)—Without request party cannot complain of omissions in charge.**

Where appellant requested no additional charge, he cannot complain of omissions in the charge given.

**6. Trial ⬤⟿253(5)—Charge directing verdict for defendant, but ignoring plaintiff's claim, properly refused.**

In an action for rescission of a conveyance of land which plaintiff exchanged for an interest in an oil and gas lease, where plaintiff asserted defendant's failure to grant an oil and gas lease on the lands conveyed was fraudulent, a charge for defendant which ignored the right of plaintiff to rescind, etc., and presented only defendant's claim that he was to receive an additional consideration for the lease, was properly refused.

**7. Trial ⬤⟿203(3)—Charge should present defendant's version.**

Where plaintiff sought to rescind a conveyance of land on the ground defendant failed to carry out his agreement to grant plaintiff an oil and gas lease on the property conveyed, and defendant insisted that he was to receive $1 per acre for the lease, the charge should present defendant's contention.

**8. Exchange of property ⬤⟿5—Where plaintiff without fault is unable to restore status quo, rescission will not be denied.**

Where defendant exchanged an interest in an oil and gas lease for plaintiff's land, and on suit by the other lessees for partition the leasehold interest was sold by judicial decree, defendant being made a party to the suit for partition, defendant cannot prevent plaintiff's rescission on account of his fraud, on the theory that plaintiff could not restore the status quo.

Appeal from District Court, Comanche County; J. H. Arnold, Judge.

Action by Oscar Calloway against W. P. Long. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Smith & Woodruff, of Comanche, A. R. Eidson, of Hamilton, and Jos. M. Nealon, of El Paso, for appellant.

Wilkinson & McGaugh, of Brownwood, and Calloway & Calloway, of Comanche, for appellee.

HIGGINS, J. Calloway brought this suit to set aside and rescind a conveyance of 502 acres of land in Comanche county conveyed to Long by deed dated February 8, 1918. The petition is in two counts. Briefly stated, the material allegations are as follows:

In the first count it was alleged that on February 8, 1918, Long represented to Calloway that he was the owner of an undivided one-third interest in an oil and gas lease upon 14 acres of land in Brown county, Tex., leased by one Stewart to Long, J. C. Hardin, and J. H. Magness; that there were 13 wells thereon which had and would produce 40 barrels of oil from each well daily; that there was an indebtedness of about $7,500 against the same; that Long offered to exchange his interest in the Brown county property for the 502 acres of land in Comanche county and the notes of Calloway aggregating $8,375 and certain live stock, it being agreed that Calloway was to reserve the mineral rights in the 502 acres, which reservation was to be evidenced by a five-year oil and gas lease free of rental with a one-eighth royalty to Long, and Long was to pay his share of the indebtedness against the Brown county property; that Calloway accepted the proposition and signed and acknowledged a deed to the 502 acres, and Long signed and acknowledged a conveyance of his interest in the Brown county property to Calloway, and Calloway also executed the notes, aggregating $8,375; that on the day of the preparation and exchange of the papers it was late, and at Long's request and for the convenience of all parties they separated with the intention that the trade would be completed and consummated with the subsequent delivery of the live stock to Long and of the oil and gas lease from Long to Calloway, it being understood that the delivery then made of the deed and notes of Calloway and the assignment by Long was not to pass title to the respective grantees until the balance of the consideration respectively due by the parties should be paid and delivered; that thereafter some discussion arose as to whether the trade would be consummated, and thereafter Long refused to return to Calloway the deed to the 502 acres, and the notes, and refused to give the lease upon the 502 acres, and failed to pay the indebtedness against the Brown county property, and was then claiming the Comanche county land; that the lease which was to be given by Long

to Calloway upon the 502 acres was of the value of $12,500, and was a material consideration inducing the conveyance of the 502 acres; that title to the 502 acres had not passed to Long, and the failure of Long to give the lease on the 502 acres breached the agreement between the parties in a material respect, on account whereof Calloway elected to rescind his conveyance.

In the second count and in the alternative, if it was held that title to the 502 acres had vested in Long, then it was alleged that Long represented that there were 13 wells upon the Brown county property which would produce an average of 40 barrels daily from each well, and that the wells were equipped and prepared to pump and deliver the oil into storage tanks, and that Long would pay off his share of the indebtedness against the Brown county property if he could sell his interest therein to Calloway, and that he would accept $28,000 for his said interest, payable as follows: By conveyance of the 502 acres in Comanche county and the notes and live stock of Calloway as described in the first count, and that in consideration thereof he (Long) would transfer his interest in the Brown county property, would pay off the indebtedness against the same, and also execute and deliver to Calloway an oil and gas lease on the 502 acres, which lease was to be for a period of five years free of rent and reserving a one-eighth royalty to Long; that, relying upon the said statements and representations, Calloway accepted Long's proposition and conveyed the Comanche county land and delivered said notes and live stock; that Long executed and delivered conveyance of his one-third interest in the Brown county property, but had refused to execute and deliver the lease upon the Comanche county land and had refused to pay the indebtedness against the Brown county property; that in making the trade plaintiff relied upon said representations and promises of Long; that the same were material and induced plaintiff to convey his Comanche county land; that the representations as to the capacity of the wells were false, in that the daily production of the wells did not exceed two barrels each, and that Long's promise to pay said indebtedness and to execute and deliver the lease upon the 502 acres was wholly insincere, and when made was made without any intention to perform the same and for the purpose of misleading, cheating, and defrauding Calloway, and did mislead, cheat, and defraud; wherefore he elected to rescind.

The substance of the court's charge to the jury was as follows:

First. If they believed Long represented to Calloway that the 13 wells on the Brown county land would each produce 40 barrels daily, and Long intended such representation to be the statement of a fact, and not a mere expression of opinion, and intended thereby to

influence plaintiff to make the trade, and if such representation was untrue, and plaintiff did not know of its falsity, but believed same to be true and relied thereon, and would not have traded but for such representation, and if they further believed that said wells would not produce more than about 2 barrels each per day, or any amount less than 40 barrels, then to find for plaintiff.

Second. If they believed that Long did make such representation relative to the production capacity of the wells, but intended the same only as an expression of opinion, and did not intend the same to be an affirmative statement of fact, then such expression of opinion by Long would not be gound for rescission of the contract.

Third. If they believed Calloway knew the facts with reference to the daily production of the wells and relied on his own knowledge and judgment, and not upon the representations made by Long, then the same would not be ground for rescission.

Fourth. If they believed that Long represented and promised Calloway as an inducement to make the contract that he (Long) would execute an oil and gas lease upon the lands conveyed by Calloway for five years free of rent, and if Calloway believed such promise and relied thereon, and would not have made the contract but for such promise, and if Long had wholly failed and refused to execute and deliver to Calloway such oil lease, than to find for the plaintiff, but, if Long did not agree to give such lease rent free for five years, plaintiff would not be entitled to recover.

### Opinion.

The pleadings of Calloway are somewhat confusing, but, as we construe the petition, he, in the first count, predicates his right of rescission upon the theory that the contract was executory, it being alleged that the delivery of his deed was made with the understanding between the parties that title was not to pass until Long had fulfilled the consideration for the conveyance by giving to Calloway the five-year lease upon the Comanche county land; whereas the second count proceeds upon the theory that Calloway's conveyance of the Comanche county land was an executed contract, and the right of rescission was predicated upon the theory that there were false and fraudulent representations made by Long as to the capacity of the wells upon the Brown county property and a false and fraudulent promise made by Long to pay the indebtedness against the Brown county property and to give an oil and gas lease to Calloway upon the Comanche county land, which promise, at the time it was made, was made without any intention upon the part of Long of performing the same.

[1] The first count states a cause of action, since the right to rescind an executory con-

tract for the exchange of land is well settled where one of the parties fails to perform a promissory agreement upon his part which constitutes a material and inducing consideration for the exchange. This right is illustrated by the holding in Galbraith v. Reeves, 82 Tex. 357, 18 S. W. 696, and Lasater v. Premont, 209 S. W. 753.

[2] The second count also states a cause of action, as it is also well settled that the grantor may rescind an executed conveyance of land granted in consideration of a representation and promise on the part of the grantee to perform some act in the future and which the grantee refuses to perform, provided the representation and promise were made for the purpose of defrauding and deceiving the grantor and without any intention at the time the same was made of performing, and the failure to keep the promise is wholly without excuse. This is the rule announced in Railway Co. v. Titterington, 84 Tex. 218, 19 S. W. 472, 31 Am. St. Rep. 39; Chambers v. Wyatt, 151 S. W. 864, and cases there cited.

[3, 4] The charge of the court wholly ignores the executory nature of the transaction set up in the first count and presented by the plaintiff's evidence. The fourth paragraph of the charge in effect assumes that the conveyance was executed and authorizes a recovery by Calloway for a breach of his promise to give the oil and gas lease upon the Comanche county land without reference to the rule announced in the cases last cited that a failure to keep a promise to perform some act in the future is not to be regarded as a fraud in legal acceptation where the promise is the consideration upon which a deed is executed, and the failure to keep the promise is wholly without excuse, unless the representation and promise were made for the purpose of defrauding and deceiving and without any intention at the time the same was made of performing the promise.

Under the eleventh assignment of error appellant complains of this error in the fourth paragraph, and the same is well taken and necessitates a reversal. In view of a retrial we refrain from any comment upon the probative force of the evidence, but call attention to the rule that, where it is sought to set aside an executed conveyance upon the ground of a fraudulent promise by the grantee to perform some act in the future which he has not performed, there must be some testimony, direct or circumstantial, that at the time the party gave the promise there was no intention on his part of performing it. It is not enough simply to prove its nonperformance, for such intention cannot be inferred from that fact alone. See Beaumont Carriage Co. v. Price & Johnson, 104 S. W. 499, and Chambers v. Wyatt, supra.

[5] Under the third assignment complaint is made of the third paragraph of the court's charge, and under the seventh, eighth, and

ninth assignments complaint is made of the fourth paragraph. The third assignment complains that the third paragraph of the charge was not sufficiently full, and did not in an affirmative manner present all of the law applicable to the phase of the case there submitted. This was a matter which should have been supplied by a requested instruction, if in fact there is any basis for the particular objection made. The seventh, eighth, and ninth assignments complain of the fourth paragraph. The propositions upon which these assignments are predicated proceed upon erroneous conceptions of the legal rights of the parties raised by the pleadings and the evidence. There is no occasion to comment upon the same. What has been said disposes of all assignments complaining of the charge, and they are all overruled except the eleventh. This statement is not to be construed as an approval of the charge. We simply confine our ruling to the questions presented.

[6] Under the tenth assignment complaint is made of the refusal of a special charge requested by defendant instructing the jury that if they believed Long had agreed to execute to Calloway an oil and gas lease on the Comanche county land, but agreed to do so for a cash consideration of $1 per acre, and that the lease should run for a period of five years free of rent, then to find for the defendant. This charge was properly refused because it wholly ignores the right of Calloway to rescind upon the fraudulent grounds set up in both counts of his petition. His pleadings and evidence present issues which would entitle him to recover. A special charge directing a verdict for defendant without reference to those issues would constitute reversible error against Calloway. So the charge was properly refused. Eppstein v. Thomas, 16 Tex. Civ. App. 619, 44 S. W. 893; Railway Co. v. House, 51 Tex. Civ. App. 603, 113 S. W. 154.

[7] In this connection, however, it should be said that Long admits he agreed to give Calloway the lease upon the Comanche county land, but his contention was that Calloway was to pay him $1 cash per acre for such lease, whereas Calloway contended that the lease was to be entirely rent free. Upon retrial the court should give an affirmative instruction presenting Long's contention with reference to the agreement about the the oil and gas lease on the Comanche county land.

Other assignments complain of the refusal of other special instructions requested by Long. None of them present any error, for the reason that as drawn the charges were improper. In this connection it is proper to say that the charge given by the court did not present the defensive issues tendered by the testimony of Long, and upon retrial a

charge should be given which would adequately and properly protect his rights.

In submitting the plaintiff's side of the case it should be borne in mind that the right of a grantor to rescind an executed conveyance for the breach of a verbal promise by the grantee is governed by rules of law materially different from those where the contract remains executory arising out of the fact that delivery of the deed was made with intention that title should not pass. The cases above cited illustrate the rules of law applicable in the two cases. The charge given should present both phases of the plaintiff's case if raised by the evidence.

As to those assignments which complain of the refusal of a peremptory instruction and those asserting that the evidence is insufficient to sustain the verdict and judgment, it is sufficient to say that the testimony adduced in behalf of the plaintiff clearly raised issues which must be submitted to the jury. As to those contentions, based upon the theory of ratification by Calloway after the discovery of the alleged fraud and a waiver of his right of rescission, no such questions are presented by the pleadings.

[8] There is no merit in the contention that Calloway has lost his right of rescission because of his inability to restore the status quo arising out of the fact that under court proceedings title to the Brown county property has passed to a third party. The record discloses that Hardin and Magness, joint owners in the Brown county property, brought suit for partition, to which suit Calloway and Long were both parties, that in this suit a receiver was appointed, and the property, being found to be incapable of partition, was ordered sold and was sold, and that the proceeds of the Calloway-Long one-third interest are held subject to the final disposition of the present case. This partition proceeding was a matter over which Calloway had no control, or, at any rate, no more control than his codefendant, Long.

The change of form of the Long interest in the Brown county property having come about without any act or fault of Calloway, and having taken place subsequent to the rescission declared by Calloway, he is not precluded from maintaining this suit because of his inability to restore in kind the status quo of the Long interest in Brown county property. Dawson v. Sparks, 1 Posey, Unrep. Cas. 735; Plotner & Stoddard v. Warehouse, etc., Co., 122 S. W. 443–446; Brown v. Norman, 65 Miss. 369, 4 South. 293, 7 Am. St. Rep. 663–671; Wright v. Dickinson, 67 Mich. 580, 35 N. W. 164, 11 Am. St. Rep. 602–611; Henninger v. Heald, 51 N. J. Eq. 74, 26 Atl. 449–451; Basye v. Paola Refining Co., 79 Kan. 755, 101 Pac. 658, 25 L. R. A. (N. S.) 1302, 131 Am. St. Rep. 346–349; Thackrah v. Haas, 119 U. S. 499, 7 Sup. Ct. 311, 30 L.

Ed. 486; Black on Rescission and Cancellation, p. 1427, § 618; 24 Am. & Eng. Encyc. of Law (2d Ed.) p. 623, bb.

For the error indicated the eleventh assignment is sustained, and the cause is reversed and remanded.